**ALABAMA DEPARTMENT OF YOUTH SERVICES et al.**

v.

**Charles BROADEN et al.**

**2141006.**

Court of Civil Appeals of Alabama.

March 18, 2016.

T. Dudley Perry, gen. counsel, and Lynne R. Thrower, deputy gen. counsel, Alabama Department of Youth Services, for appellants.

William F. Patty of The Gardner Firm, P.C., Montgomery; Sam Heldman of The Gardner Firm, P.C., Washington, D.C.; and Thomas Loper of The Gardner Firm, P.C., Mobile, for appellees.

MOORE, Judge.

In 1973, the Alabama Legislature created the Alabama Department of Youth Services ("the DYS"), *see* Ala. Acts 1973, Act No. 816, § 3, codified at § 44–1–20, Ala. Code 1975, to, among other things, establish and provide educational services and facilities for youths who juvenile judges have deemed in need of such services. *See* § 44–1–1, Ala.Code 1975. By law, a board ("the DYS board") composed of 18 voting members oversees the DYS. § 44–1–51, Ala.Code 1975. The DYS board appoints the director of the DYS, § 44–1–52(1), Ala. Code 1975, who supervises the daily operations of the DYS. § 44–1–21, Ala.Code 1975.

In 1982, the Alabama Legislature designated the DYS as a special school district of the state to be known as the "youth services department district," which we shall hereinafter refer to as "the district." *See* Ala. Acts 1982, Act No. 82–485, § 1, codified as § 44–1–70, Ala.Code 1975. In that same act, the legislature created the position of superintendent of the district, whose duties it would be to manage the educational services and facilities provided by the DYS under the direct supervision of the DYS director. Act No. 82–485, § 2, codified as § 44–1–71, Ala.Code 1975. Section 44–1–75, Ala.Code 1975, requires the DYS director and the superintendent of the district to develop a salary schedule for teachers employed by the DYS, which salary schedule must be compliant with the "State Minimum Salary Schedule" for teachers ("the minimum salary schedule"), *see* § 16–13–231.1, Ala.Code 1975, which establishes salaries based on the level of educational certification and years of experience of the teacher.

Beginning at least in 1993, the Alabama Legislature enacted legislation requiring the state's budget officer to allocate funds to the district (and other educational institutions) to increase the salaries of its teachers and other employees. *See* Act No. 93–646, §§ 1 and 2, Ala. Acts 1993, codified as § 16–22–10, Ala.Code 1975. Thereafter, the legislature periodically enacted legislation to provide for cost-of-living salary increases for the district's teachers. *See* §§ 16–22–11 through 16–22–13.4, Ala.Code 1975. By Act No. 2007–296, § 1,

Ala. Acts 2007, codified as § 16–22–13.5, the legislature provided for a 7% salary increase for all teachers employed by the district to be instituted "[f]or the fiscal year beginning October 1, 2007 and each year thereafter." § 16–22–13.5(a)(1).

In 2008, Governor Bob Riley instituted a "freeze" on "annual merit pay raises" for employees of all state agencies and departments, which his successor, Governor Robert Bentley, continued until December 31, 2013. Between fiscal year 2009 and fiscal year 2013, J. Walter Wood, who was the DYS director during that period, submitted to Jackie Graham, the director of the State Personnel Department, requests for the annual salary increases set out in § 16–22–13.5 for the district's teachers, but the State Personnel Department refused to process those proposed personnel actions, each time citing the governor's mandated freeze on merit-pay raises. The teachers employed by the district eventually received pay raises on October 1, 2014.

On September 16, 2014, Charles Broaden, Karen John, and Delvetta Thomas, all teachers employed by the district, filed in the Montgomery Circuit Court ("the trial court") a complaint, seeking a declaratory judgment, injunctive relief, and a writ of mandamus, which other district teachers, Ginger Dunn, Maureen Womack, and Lisa Williams, later joined as plaintiffs by amendment (the plaintiffs are hereinafter referred to collectively as "the teachers"). In their last amended complaint, the teachers sought a judgment declaring that they had not been properly paid, an injunction to assure their proper payment, and a writ of mandamus to compel their proper payment. The teachers later clarified that, because they are now being paid correctly, they are seeking only backpay for the period that they did not receive their salary increases between 2008 and October 1, 2014. The teachers named as defendants the DYS; Steven P. Lafreniere, the director of the DYS; Dr. Raphael Richardson, the superintendent of the district; and Buddy Aydelette, Lawrence Battiste, Dr. Thomas Bice, Barbara Boyd, K.L. Brown, Nancy Buckner, Paul Bussman, Jim Byard, Jr., Linda Coleman, Robert M. Duke, Stacie Jenkins, William McDowell, Jim Reddoch, Judge Ryan Rumsey, Judge Braxton Sherling, Charles Smith, Dr. Donald Williamson, and Phillip Wynne, members of the DYS board. The defendants, who we will hereinafter refer to collectively as "the DYS defendants," filed an answer, raising, among other things, the defense that they could not have raised the salary of the teachers because of the freeze.

By agreement, the parties submitted briefs and evidentiary submissions in support of those briefs in lieu of a trial. Those briefs reveal no dispute that the salary schedule adopted by the DYS pays to the district's teachers "an amount equal to the State Minimum Salary schedule once the State Minimum Salary schedule is adjusted for the 235 day work schedule of [the teachers]." The parties also did not dispute the educational certification, years of experience, and years of service of each individual teacher, or the salary corresponding to each teacher according to the DYS salary schedule. The parties also agreed that between 2008 and 2013 none of the teachers received the annual salary increases consistent with § 16–22–13.5.

In their briefs, the parties did dispute whether the DYS defendants had a statutory and ministerial duty to assure payment of salaries to the teachers according to the DYS salary schedule and § 16–22–13.5. The teachers argued that § 16–22–13.5 mandates that they receive the specified raises and asserted that the DYS defendants were the state officials responsible for assuring that they received those

raises. The DYS defendants maintained that he Budget Management Act, § 41–19–1 et seq., Ala.Code 1975, gives the governor the authority to institute a freeze in salary raises and that no salaries may be increased without the approval of the state's director of finance as set out in § 41–19–10(d), Ala.Code 1975, which provides:

"No state agency/department may increase salaries of its employees, employ additional employees or expend money or incur any obligations except in accordance with law and with a properly approved operations plan by the Director of Finance."

The DYS defendants further contended that they had done nothing to injure the teachers because Wood, the director of the DYS during the pertinent period, had submitted the requests for the pay raises to the State Personnel Department but those requests had been denied. The DYS defendants asserted that they did not have the authority to override the freeze mandated by the governor or the power to compel the director of finance to allow the salary increases.

On July 29, 2015, the trial court entered a judgment. The trial court determined that §§ 16–22–10 through 16–22–13.6 imposed upon the DYS defendants

"a legal duty to establish a salary schedule that meets or exceeds the State Minimum Salary Schedule and to pay [the teachers] a salary that meets or exceeds the State Minimum Salary Schedule.

The Court further finds that [the DYS] Defendants failed to pay [the teachers] a salary that meets or exceeds the State Minimum Salary Schedule for past services performed by [the teachers]."

The trial court ordered the DYS defendants to pay the teachers backpay in specified amounts to cover the period between 2008 and 2014 that the salary increases were not implemented. The DYS defendants [1] timely appealed to this court.[2]

## Discussion

Section 44–1–75 unambiguously imposes upon the DYS director and the superintendent of the district the duty to develop a salary schedule for the district's teachers. Section 16–13–231.1 also unambiguously provides that the salary schedule for the district's teachers shall at least comply with the minimum salary schedule. The teachers do not complain that the DYS director and the superintendent failed to perform those statutory duties. The teachers agree that the district did, in fact, adopt a salary schedule consistent with the minimum salary schedule in which the salaries of the teachers are established by educational certification and years of public education experience.

Section 16–22–13.5(a) provides, in pertinent part:

"The State Budget Officer shall allocate to ... the Board of Youth Services School District ... for disbursement to the employees thereof funds based on the criteria established in this section.

1. The notice of appeal designated "Alabama Department of Youth Services, et al." as the appellant. Because the trial court entered a judgment against all the DYS defendants, the designation "et al.," the Latin and legal term for "[a]nd other persons," see *Black's Law Dictionary* 669 (10th ed.2014), was sufficient to include all the DYS defendants as appellants. See *McKinney v. Commissioner's Court of Bibb Cty.*, 168 Ala. 191, 52 So. 756 (1909).

2. This court transferred the appeal to the Supreme Court of Alabama for lack of subject-matter jurisdiction. The supreme court transferred the appeal back to this court, pursuant to § 12–2–7, Ala.Code 1975. This court held oral arguments on the appeal on February 2, 2016.

It is not the intent of this section to make appropriations, but the appropriations required by this section shall be made in the annual budget act for the public schools and colleges for the designated fiscal years.

"(1) Certificated personnel (K–12). For the fiscal year beginning October 1, 2007, and each year thereafter, each certificated employee ... at the Department of Youth Services School District shall receive a seven percent salary increase. Each step and cell on the State Minimum Salary Schedule contained in the annual budget act for the public schools shall be increased by the amounts below for fiscal year 2007–08, the State Minimum Salary Schedule shall reflect the [seven percent] increase[ ]:

"[Table reflecting increases omitted.]

"All certificated employees ... shall be guaranteed pay increases in the amounts indicated above for their years of experience and degrees earned and the corresponding pay increases shall be reflected in the appropriate local salary schedule and paid to each certificated employee. The provisions and requirements of this section shall be in addition to the provisions of Section 16–13–231.1, [Ala.Code 1975,] relating to the State Minimum Salary Schedule. Each certificated employee shall be properly placed on the local salary schedule according to degree earned and years of public education service, either instate or out-of-state, which shall be not less than the amounts appropriated for the State Minimum Salary Schedule. The employee shall be paid according to degree earned and length of public education experience. The pay increase shall be given to each person employed for the 2007–08 fiscal year in addition to any state or local step increase to which the employee is otherwise entitled. The local board of education shall transmit to the State Department of Education the appropriate notice of the earned advanced degree for each employee in a timely fashion; thereafter, the employee shall be paid for the advanced degree as soon as the degree is certified to the State Department of Education as being earned."

Section 16–22–13.5(a)(1) mandates that "[a]ll certificated employees" employed by the district shall receive a 7% annual salary increase beginning in fiscal year 2007 and that those raises "shall be reflected in the appropriate local salary schedule and paid to each certificated employee." The teachers do not complain that the DYS defendants failed to amend the district's salary schedule to comply with § 16–22–13.5. The teachers acknowledge that Wood, the director of the DYS during the pertinent period, annually submitted requests to increase the teachers' salaries in accordance with § 16–22–13.5. The teachers' claims rest entirely on the fact that they were not paid the salary increases.

Section 44–1–73, Ala.Code 1975, provides that the DYS board and the State Board of Education "shall establish a funding formula" to meet the educational needs of the youth served by the DYS. Section 44–1–56, Ala.Code 1975, provides:

"Each biennium the youth services board shall present to the governor a request for funds based on projected needs for juvenile services in the state, together with a budget showing proposed expenditures. The governor shall include in his appropriation bill a request for funds to meet the reasonable financial needs of the department."

The teachers presented no evidence indicating that the DYS board failed to dis-

charge its statutory duty under § 44–1–73 or § 44–1–56. The teachers also did not show that the DYS board failed to include the salary increases mandated in § 16–22–13.5 in its "request for funds" to which § 44–1–56 refers.

Section 16–22–13.5(a)(1) provides that each certified employee of the district "shall receive" the 7% increase, but it nowhere places the duty of payment on any of the DYS defendants. Undisputed evidence in the record shows that the district's teachers, as state employees, *see* § 36–26–10(b)(5), Ala.Code 1975, generally are paid through the "Government Human Resource System" administered by the State Personnel Department. According to an unopposed affidavit submitted by the DYS defendants, any change in pay "must be approved by both the State Personnel Office and the Finance Director." The record indicates that Jackie Graham, the director of the State Personnel Department at all pertinent times, refused the requests to increase the salaries of the teachers. The teachers have failed to point to any statutory or other authority by which the DYS defendants could have compelled the State Personnel Department to pay the salary increases.

Graham repeatedly denied the salary increases on the basis that the governor had ordered the State Personnel Department "to maintain the freeze on merit raises." The record implies that, despite the terms of § 16–22–13.5, the state's budget officer did not allocate the funds necessary to pay the teachers' salary increases because of the freeze on merit raises. The DYS defendants argue that the governor had the authority to suspend the salary increases pursuant to the Budget Management Act. In particular, the DYS defendants maintain that, under § 41–19–10(d), quoted above, the director of finance lawfully followed the directives of the governor when denying any raises.

On the other hand, the teachers argue that the clear and imperative terms of § 16–22–13.5 required the payment of their salary increases. According to the teachers, § 16–22–13.5 mandates that the state's budget officer, the executive officer who heads the Division of the Budget in the Department of Finance, *see* § 41–4–81, Ala.Code 1975, shall allocate funds for payment of the salary increases. The teachers argue that, under the terms of § 16–22–13.5, the director of finance had no discretion to disapprove of the salary increases or to instruct the State Personnel Department to withhold payment of those increases.

We find no need to address the interplay between § 41–19–10(d) and § 16–22–13.5. The teachers did not join the director of finance, the director of the State Personnel Department, the state's budget officer, or the governor as parties to their action. Thus, the only question before this court is whether the DYS defendants had a duty to pay the teachers the pay raises set out in § 16–22–13.5. The resolution of that issue does not depend on whether any other state officer had such a duty or whether any other state officer could lawfully interfere with that duty. Our review of the applicable statutory law indicates that the DYS defendants have a duty to implement appropriate salary schedules, to properly place each certified employee in the salary schedule, and to request of the governor such funds as are necessary to pay any salary increases for the district's teachers as mandated by the minimum salary schedule established by the legislature. We have not located any law that gives the DYS defendants control over the funding or payment of any of the salary increases set out in § 16–22–13.5.

### Conclusion

In their complaint, the teachers sought a judgment declaring that the DYS defen-

dants had unlawfully failed to pay the teachers' salary increases, an injunction to require the DYS defendants to pay those salary increases, and a writ of mandamus to compel the DYS defendants to make those payments. To prevail, the teachers had to prove that the DYS defendants owed them a legal duty to pay the salary increases. The existence of a legal duty is a question of law that this court reviews de novo. *See Gowens v. Tys. S.*, 948 So.2d 513 (Ala.2006). Based on our review of the applicable statutes, we determine that the DYS defendants did not have a legal duty to pay the salary increases. Therefore, the trial court erred in granting the teachers the relief they requested; we therefore reverse the trial court's judgment and remand the cause for the entry of a judgment consistent with this opinion.[3]

REVERSED AND REMANDED WITH INSTRUCTIONS.

THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

---

**3.** Because we have determined that the trial court's judgment is due to be reversed based on the first argument advanced by the DYS defendants, we pretermit discussion of the remaining arguments. *See, e.g., Jackson v. Wicks*, 139 So.3d 813, 820 (Ala.Civ.App.2013).